**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA
OKLAHOMA CITY DIVISION**

| | |
|---|---|
| CARROLL GREGG, Individually and For Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE WILLIAMS COMPANIES, INC.,<br><br>Defendant. | Case No. CIV-20-421-SLP<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)<br><br>CLASS ACTION PURSUANT TO FED. R. CIV. P. 23 |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Carroll Gregg (Gregg) brings this lawsuit to recover unpaid overtime wages and other damages from The Williams Companies, Inc. (Williams) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the Pennsylvania Minimum Wage Act (PMWA), *see* 43 P.S. § 33.101 *et seq.*

2. Gregg worked for Williams as an Officer Manager/Field Accountant in Pennsylvania.

3. Gregg and the Day Rate Workers (as defined below) regularly worked more than 40 hours a week.

4. But Williams did not pay them overtime.

5. Instead of paying overtime as required by the FLSA and PMWA, Williams classified Gregg and other similarly situated workers as independent contractors and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6. Williams never paid Gregg or the Day Rate Workers a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. The Court also has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because Williams maintains its headquarters in this District and Division.

11. Specifically, Williams maintains its headquarters in Oklahoma City, Oklahoma.

## PARTIES

12. Gregg worked for Williams as an Office Manager/Field Accountant from approximately July 2017 until August 2018.

13. Gregg worked for Williams in Pennsylvania.

14. Throughout her employment, Gregg was paid a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime compensation ("day rate pay plan") and was classified as an independent contractor.

15. In fact, Gregg was Williams' employee.

16. Gregg's consent to be a party plaintiff is attached as Exhibit 1.

17. Gregg brings a FLSA collective action on behalf of herself and all other Williams' Office Managers and Field Accountants who were classified as independent contractors and paid according to Williams' day rate pay plan.

18. Williams paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

19. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All Office Managers and Field Accountants employed by, or working on behalf of, Williams who were paid a day rate at any time in the last 3 years (the "FLSA Day Rate Workers").**

20. Gregg also seeks class certification of an additional class under Fed. R. Civ. P. 23 under the PMWA as follows:

> **All Office Managers and Field Accountants employed by, or working on behalf of, Williams in Pennsylvania who were paid a day rate at any time in the last 3 years (the "Pennsylvania Day Rate Workers").**

21. The FLSA Day Rate Workers and the Pennsylvania Day Rate Workers are referred to collectively as the Day Rate Workers.

22. Williams may be served with process by serving its registered agent: **The Corporation Company, 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.**

## FLSA COVERAGE

23. At all relevant times, Williams has been an employer within the meaning of section 3(d) of the FLSA. 29 U.S.C. § 203(d).

24. At all relevant times, Williams has been part of an enterprise within the meaning of section 3(r) of the FLSA. 29 U.S.C. § 203(r).

25. At all relevant times, Williams has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

26. At all relevant times, Williams has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

27. In each of the past 3 years, Williams' annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

28. At all relevant times, Gregg and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

29. Williams treated Gregg and the Day Rate Workers as employees and uniformly dictated the pay practices it applied to Gregg and the Day Rate Workers.

30. Williams' misclassification of Gregg and the Day Rate Workers as independent contractors does not alter their status as an employee for purposes of the FLSA or PMWA.

## FACTUAL ALLEGATIONS

31. Williams bills itself as "committed to being the leader in providing infrastructure that safely delivers natural gas products to reliably fuel the clean energy economy."[1]

32. To complete its business objectives, Williams hires personnel, such as Gregg, to perform services on its oil and gas ventures.

33. Williams does not hire these workers on a project-by-project basis.

34. Rather, Williams hires and treats these workers just like regular, even if sometimes short-term, employees.

---

[1] https://www.williams.com/ (last visited May 6, 2020).

35. Many of these individuals worked for Williams on a day rate basis (without overtime pay).

36. These workers make up the proposed collective of Day Rate Workers.

37. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

38. For example, Gregg worked for Williams as an Office Manager/Field Accountant from approximately July 2017 until August 2018.

39. Throughout her employment with Williams, Williams paid her on a day rate basis.

40. Gregg and the Day Rate Workers work for Williams under its day rate pay scheme.

41. Gregg and the Day Rate Workers do not receive a salary to be exempt under the FLSA or PMWA.

42. If Gregg and the Day Rate Workers did not work, they did not get paid.

43. Gregg and the Day Rate Workers do not receive overtime pay.

44. This is despite the fact Gregg and the Day Rate Workers often work more than 10 hours a day, for 6-7 days a week, for weeks at a time.

45. Although she typically worked at least 6 days a week, for more than 10 hours a day, Gregg did not receive any overtime pay.

46. Gregg and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

47. Gregg's work schedule is typical of the Day Rate Workers.

48. Williams knows Gregg and the Day Rate Workers work for more than 10 hours a day, for at least 6 days a week.

49. Williams' records reflect the fact that Gregg and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

50. Williams does not pay Gregg or the Day Rate Workers overtime for hours worked in excess of 40 in any of those weeks.

51. Instead, Williams pays Gregg and the Day Rate Workers on a day rate basis.

52. Gregg and the Day Rate Workers are not employed on a salary basis.

53. Gregg and the Day Rate Workers do not, and have never, received guaranteed weekly compensation from Williams irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

54. Williams' policy of paying Gregg and the Day Rate Workers a day rate with no overtime compensation violates the FLSA and PMWA because it deprives Gregg and the Day Rate Workers of overtime for the hours they work in excess of 40 hours in a single workweek.

55. Williams knew Gregg and the Day Rate Workers worked more than 40 hours in a week.

56. Williams controls Gregg and the Day Rate Workers' work.

57. Williams requires Gregg and the Day Rate Workers to follow Williams' policies and procedures.

58. Gregg and the Day Rate Workers' work must adhere to the quality standards put in place by Williams.

59. Gregg and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

60. As an Officer Manager/Field Accountant, Gregg's primary responsibilities included handling all the documentation on Williams' projects and ensuring everything is documented in accordance with Williams' specifications and protocols.

61. All of the Day Rate Workers perform similar duties, handling all the documentation on Williams' projects and ensuring everything is documented in accordance with Williams' specifications and protocols.

62. Without the job performed by Gregg and the Day Rate Workers, Williams would not be able to complete its business objectives.

63. Gregg and the Day Rate Workers relied on Williams for work and compensation.

64. Gregg and the Day Rate Workers worked in accordance with the schedule set by Williams.

65. Gregg and the Day Rate Workers cannot subcontract out the work they are assigned by Williams.

66. Gregg and the Day Rate Workers must follow Williams' policies and procedures.

67. Gregg and the Day Rate Workers' work must adhere to the quality standards put in place by Williams.

68. Gregg and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

69. Gregg and the Day Rate Workers did not possess any specialized or unique skill set.

70. Gregg and the Day Rate Workers did not market their services while employed by Williams.

71. Gregg and the Day Rate Workers worked exclusively for Williams during the relevant period.

72. Gregg and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and/or insurance.

73. Williams set Gregg and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working on jobs for Williams.

74. At all relevant times, Williams maintained control, oversight, and direction of Gregg and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

75. Williams knew Gregg, and other Day Rate Workers, worked more than 40 hours in a week.

76. Williams knew, or showed reckless disregard for whether, the Day Rate Workers were not exempt from the FLSA or PMWA's overtime provisions.

77. Nonetheless, Williams failed to pay Gregg and the Day Rate Workers overtime.

78. Williams knowingly, willfully, or in reckless disregard carried out this illegal day rate pay plan that deprived Gregg and the Day Rate Workers of overtime compensation in violation of the FLSA and PMWA.

79. Williams' failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

80. Williams willfully violated the FLSA.

## CAUSE OF ACTION
## FLSA VIOLATION

81. Williams' day rate pay plan violates the FLSA because Gregg and the other Day Rate Workers did not receive overtime pay for hours they worked in excess of 40 in a week.

82. Williams knew, or showed reckless disregard for whether, its day rate pay plan violated the FLSA.

83. Williams' failure to pay overtime compensation to the Day Rate Workers was not based on any reasonable interpretation of the law.

84. Nor was Williams' decision not to pay its Day Rate Workers overtime made in good faith.

85. Accordingly, Gregg and the Day Rate Workers are entitled to recover their unpaid overtime under the FLSA, liquidated damages, attorneys' fees, and costs.

## CAUSE OF ACTION
## PMWA VIOLATION

86. Gregg brings her claim under the PMWA as a Rule 23 class action.

87. The conduct alleged violates the PMWA.

88. At all relevant times, Williams was subject to the requirements of the PMWA.

89. At all relevant times, Williams employed Gregg and the Pennsylvania Day Rate Workers as "employees" within the meaning of the PMWA.

90. The PMWA requires employers like Williams to pay employees at 1.5 times their regular rate of pay for hours worked in excess of 40 in any week.

91. Gregg and the Pennsylvania Day Rate Workers are entitled to overtime under the PMWA.

92. Williams has and has had a policy and practice (its day rate pay plan) that failed to pay Gregg and the Pennsylvania Day Rate Workers overtime for hours worked in excess of 40 in a workweek.

93. Gregg and the Pennsylvania Day Rate Workers seek unpaid overtime in amount equal to 1.5 times their regular rates of pay for work performed in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

94. Gregg and the Pennsylvania Day Rate Workers also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Williams, as provided by the PMWA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

95. Gregg brings this claim as a class and collective action under the FLSA and PMWA.

96. The Day Rate Workers were victimized by Williams' day rate pay plan which is in willful violation of the FLSA and PMWA.

97. Other Day Rate Workers worked with Gregg and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

98. Based on her experiences with Williams, Gregg is aware that Williams' illegal day rate pay plan was imposed on the Day Rate Workers.

99. The Day Rate Workers are similarly situated in all relevant respects.

100. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

101. The illegal day rate pay plan Williams imposed on Gregg was imposed on all Day Rate Workers.

102. Like Gregg, the other Day Rate Workers are denied overtime when they work more than 40 hours per week.

103. The overtime owed to Gregg and the Day Rate Workers will be calculated using the same records and the same formula.

104. Gregg's experiences are therefore typical of the experiences of the Day Rate Workers.

105. The specific job titles or precise job locations of the various members of the Putative Class do not prevent class or collective treatment.

106. Gregg has no interest contrary to, or in conflict with, the Day Rate Workers that would prevent class or collective treatment.

107. Like all Day Rate Workers, Gregg has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

108. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

109. Absent a class or collective action, many Day Rate Workers will not obtain redress of their injuries, and Williams will reap the unjust benefits of violating the FLSA and PMWA.

110. Further, even if some of the Day Rate Workers could afford individual litigation against Williams, it would be unduly burdensome to the judicial system.

111. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Day Rate Workers, as well as provide judicial consistency.

112. The questions of law and fact that are common to each Day Rate Worker predominate over any questions affecting solely the individual members.

113. Among the common questions of law and fact are:

   a. Whether Williams was Gregg and the Day Rate Workers' employer within the meaning of the FLSA and PMWA;

   b. Whether Williams' decision to pay a day rate with no overtime compensation to these workers was made in good faith;

   c. Whether Williams' violation of the FLSA was willful; and

   d. Whether Williams' illegal pay practice applied to the Day Rate Workers.

114. Gregg and the Day Rate Workers sustained damages arising out of Williams' illegal and uniform employment policy.

115. Gregg knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class and collective action.

116. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Williams' records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective treatment.

117. Consistent with Williams' illegal day rate policy, Gregg and the Day Rate Workers were not paid overtime when they worked more than 40 hours in a workweek.

118. As part of their regular business practices, Williams intentionally, willfully, and repeatedly applied its day rate pay plan to Gregg and the Day Rate Workers.

119. Williams' illegal day rate pay plan deprived Gregg and the Day Rate Workers of the premium overtime wages they are owed under federal law.

120. Williams is aware, or should have been aware, that the FLSA required it to pay Gregg and the Day Rate Workers overtime premiums for hours worked in excess of 40 in a workweek.

121. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

122. The other Day Rate Workers are known to Williams, are readily identifiable, and can be located through Williams' records.

## JURY DEMAND

Gregg demands a trial by jury.

## RELIEF SOUGHT

Wherefore, Gregg prays for:

(a) an order allowing Gregg's FLSA claims to proceed as a collective action and directing notice to the other Day Rate Workers pursuant to § 216(b) of the FLSA;

(b) an order designating the Pennsylvania Class as a class action pursuant to Fed. R. Civ. P. 23;

(c) an order appointing Gregg and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

(d) judgment finding Williams in violation of the FLSA;

(e) judgment finding Williams liable to Gregg and the Day Rate Workers for unpaid overtime, and an equal amount of liquidated damages;

(f) judgment awarding Gregg and the Day Rate Workers reasonable attorneys' fees and costs of this action;

(g) judgment awarding Gregg and the Day Rate Workers pre- and post-judgment interest at the highest rates allowed by law; and

(h)  such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    OK Fed. ID 14-145
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    OK Fed. ID 14-148
    **Taylor A. Jones***
    Texas Bar No. 24107823
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    tjones@mybackwages.com
    **Pro Hac Vice Application Forthcoming*

AND

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**